<hr/>

Argued 20 March, decided 22 May, 1906.

**MILLER *v.* BEAVER HILL COAL CO.**

85 Pac. 502.

MASTER AND SERVANT—LIABILITY FOR MEDICAL ATTENDANCE—EFFECT OF PAYING HOSPITAL DUES—CHARITIES.*

*NOTE.—The following cases, having appended either notes or the briefs of counsel, may be consulted with reference to the question here considered: *Williamson* v. *Louisville Industrial School,* 23 L. R. A. 20 ); *Union Pac. R. Co.* v. *Artist,* 23 L. R. A. 581 ; *Eighmy* v. *Union Pac. R. Co.* 27 L. R. A. 840 ; *Pittsburgh, C. C. & St. L. R. Co.* v. *Sullivan,* 50 Am St. Rep. 313, 27 L. R. A. 840 ; *Hearns* v. *Waterbury Hospital,* 31 L. R. A 224 ; *Bedford Belt Ry. Co.* v. *McDonald,* 60 Am. St. Rep. 172 ; *Sawdey* v. *Spokane Falls & N. Ry. Co.* 94 Am. St. Rep. 880.        REPORTER.

The collection by a master from his servants of a stated amount each month for maintaining a hospital for his employees, in the absence of a contract with such servants to furnish them attendance at the hospital, amounts to only a subscription by the employees for the support of a place where they can obtain such attendance as the amount subscribed will provide, and the master is not bound to supply all the medical or surgical services that may be needed by injured contributors, though he is bound to spend the subscription for the purpose indicated and to use ordinary care in selecting the persons to have charge of the hospital.

From Coos: LAWRENCE T. HARRIS, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by Victor Miller against the Beaver Hill Coal Co. to recover damages for the breach of an alleged contract by which the defendant agreed to provide the plaintiff with necessary medical and surgical attention, at a hospital

maintained by it, in case of his injury while in its employ. The facts, as disclosed by the testimony, are these: The defendant company is engaged in coal mining at Beaver Hill, in Coos County. It has a hospital at its mine in charge of a physician at which its employees, and those of subcontractors paid through its office, are entitled to be cared for free in case of sickness or injury while in its service. For the support and maintenance of the hospital $1.50 a month is deducted from the wages of each employee by their consent, or at least without objection from them. In August, 1904, the plaintiff, while at work for a subcontractor, was seriously injured by an iron splinter penetrating the abdominal wall. He was taken to the company's hospital and the wound examined by Dr. Chambers, who was temporarily in charge during the absence of the regular physician. The doctor found the wound to be of such a character as to require a surgical operation which could not be performed by him alone or with the facilities at his command. He telephoned to Coquille, the nearest town, for assistance, but was unable to obtain a surgeon from that place and thereupon at plaintiff's request telephoned to Marshfield to Dr. Mingus, who came out to the mine and performed the necessary operation. Mingus charged the plaintiff $250 for his services, and, defendant refusing to reimburse him therefor, he brought this action to recover the amount. At the close of plaintiff's testimony the defendant moved for a nonsuit, which motion was overruled and a verdict rendered in favor of plaintiff. From the judgment entered on the verdict, the defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Coke & Seabrook* and *A. J. Sherwood,* with an oral argument by *Mr. J. L. Coke.*

For respondent there was a brief over the names of *E. L. C. Farrin* and *J. M. Upton,* with an oral argument by *Mr. Upton.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This action is founded on contract, and before the plaintiff can recover he must show that defendant agreed to furnish him with necessary medical and surgical attendance in case of in-

jury, and that it neglected to comply with its contract. The only evidence on this question was the testimony of the plaintiff and the witnesses Bjorquist, Anderson and Carlson. The plaintiff testified that for some time prior to his injury he had been assisting in getting out mine timbers for the defendant and that it retained $1.50 each month from his wages "for the hospital." Bjorquist said the defendant had a hospital at the mine where sick and injured employees were cared for free, and that $1.50 a month was regularly deducted from the wages of each employee by the company for its support, but that he did not know who employed the physician in charge. Anderson and Carlson testified to substantially the same state of facts. Dr. Swennson, an admittedly competent physician and surgeon, was in charge of the hospital, and testified that he was employed by the defendant, that he was in Portland at the time of the accident to the plaintiff and left the hospital in charge of Dr. Chambers, who was a proper person for that purpose.

This is all the testimony that was given on the trial on the question now under consideration, and we are of the opinion it falls short of proving a contract by the defendant to provide the plaintiff with necessary medical and surgical attendance in case of injury. It merely shows that a certain sum each month was contributed by the plaintiff and his fellow employees, or exacted by the company, for the support and maintenance of a hospital for the use of the employees. There is no evidence that any statement or promise was made by the defendant to the plaintiff, or any of its employees, as to the object and purpose of the contribution or the benefit they would receive therefrom, other than it was for hospital purposes. The transaction, therefore, under the testimony, constituted in law nothing more than a subscription by the plaintiff and the other employees for the charitable purpose of maintaining a hospital, where they could obtain such medical attendance and hospital accommodations as the fund thus subscribed would afford. And the only liability assumed by the defendant in collecting the fund was to expend it for the purpose for which it was subscribed, and no other. The mere fact that it received or exacted the contribu-

tion did not impose upon it the absolute duty to furnish each contributor all the medical or surgical attendance he might need or require, whether the fund provided was sufficient or not. A sick or injured employee was entitled to the use and benefit of the hospital and the medical services there provided, to the extent of the money contributed for that purpose, but he was not obliged to go to the hospital or to accept the accommodations. He could, if he chose, go elsewhere and employ physicians and attendants other than those provided by the company, and, if he did so, the company would not be liable to reimburse him therefor. The only duty of the company was to use ordinary care in the expenditure of the money and in the employment of physicians and surgeons in charge of the hospital, and it is not responsible for the negligence of the surgeon so employed in going away and leaving the hospital in charge of another: *Union Pacific Ry. Co.* v. *Artist,* 60 Fed. 365 (9 C. C. A. 14, 23 L. R. A. 581) ; *South Florida Ry. Co.* v. *Price,* 32 Fla. 46 (13 South. 638) ; *Eighmy* v. *Union Pacific Ry. Co.* 93 Iowa, 538 (61 N. W. 1056, 27 L. R. A. 296) ; *Atchison, Topeka & S. F. R. Co.* v. *Zeiler,* 54 Kan. 340 (38 Pac. 282) ; *Richardson* v. *Carbon Hill Coal Co.* 10 Wash. 648 (39 Pac. 95).

This action is not based upon a misapplication or misappropriation of the hospital fund by the defendant, or the employment of an unskillful surgeon by it, but upon an alleged contract to furnish plaintiff with necessary medical and surgical attendance—an averment entirely unsupported by the testimony.

The judgment is therefore reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.                                      Reversed.