Argued December 11, affirmed December 27, 1917.

# CRITES *v.* WILLAMETTE VALLEY LUMBER CO.*

(169 Pac. 339.)

**Master and Servant—Contract of Master to Furnish Medical Services —Duty of Servant.**

1. Where a lumber company posted notice that it charged employees with a hospital fee of 75 cents a month after the first three days' employment, etc., and an employee paid the specified fees, there was a complete contract, requiring the company to furnish the services of its physician to the employee under the circumstances specified in the notices; it was the duty of the employee to apply for such services before employing another physician, and his duty to use reasonable diligence to find the company's physician and request his services before employing another, and if he failed to use such diligence he cannot hold the company liable for sums paid another physician.

**Master and Servant—Contract to Furnish Servant With Medical Services—Diligence of Servant to Find Company's Physician—Question for Jury.**

2. Whether or not the employee used such diligence was a question of fact for the jury to determine.

---

*On liability of master for medical attendant engaged by employee, who by the contract of employment was entitled to such attendance, see note in 37 **L. R. A.** (N. S.) 757.    REPORTER.

**Master and Servant—Employer's Contract to Furnish Medical Services —Duty of Servant.**

3. If an employee requiring the services of the employer's physician, the employer having contracted to furnish medical services, is ignorant as to who the physician is, it is his duty to inquire and ascertain same from the employer, or, when the name and place of business or residence of the physician is known, the employee should apply where it is reasonable to suppose the doctor may be found.

**Master and Servant—Contract of Master to Furnish Medical Services —Diligence of Servant or Wife.**

4. Where the wife of the employee of a lumber company which had contracted to furnish him medical services, when he was attacked by appendicitis, went at 8 in the morning to the residence of the company's physician, and learned he was out of town, at 1:30 in the afternoon went to a neighbor's house and telephoned the doctor's residence, but was again informed that he was absent, and, being a trained nurse, and becoming alarmed at her husband's condition, then called in another doctor, who operated, there was no lack of diligence on the part of the employee or his wife, in attempting to secure the attendance of the employer's physician, such as would preclude recovery from the employer of the fees paid the other doctor.

**Master and Servant—Contract to Furnish Servants Medical Attention —Breach—Liability.**

5. Where an employer, which contracts for consideration to furnish medical attention to its servants, holds out to them a particular person as its physician, and an employee uses reasonable diligence to secure his services in an illness, finds him absent, and, after waiting a reasonable time for his return, employs and pays another physician, the employer must reimburse him for the payment thus made to the other physician.

[As to liability of master for failing to furnish medical aid to injured servant, see note in Ann. Cas. 1915D, 507.]

**Master and Servant—Contract to Furnish Medical Attendance to Servants—Action for Breach—Evidence.**

6. In a servant's action against his employer, which had contracted to furnish medical attendance in case of illness, for fees paid a physician other than the employer's, the latter having been absent when the servant was attacked by appendicitis, testimony of another employee that on several occasions when injured he had gone to the office of the employer's physician and found him absent, and was not directed to apply to any other physician, was properly admitted to show that the custom of the doctor, to which he testified, of keeping an attendant at his office, who, in his absence, made arrangements for the proper treatment of his patients, had not always been observed.

**Appeal and Error—Harmless Error—Evidence.**

7. In such action, the admission of testimony of the servant's wife as to what occurred between her and the doctor's wife when the servant's wife inquired for the doctor at the family residence, if erroneous, was harmless.

From Polk: HARRY H. BELT, Judge.

This is an action by D. W. Crites against the Willamette Valley Lumber Company, a corporation, to recover for money expended for services of a physician, while in the employ of defendant. From a judgment in favor of plaintiff, defendant appealed. Affirmed.

Department 1. Statement by MR. CHIEF JUSTICE McBRIDE.

This was an action for money expended by plaintiff under the following circumstances: The defendant operated a sawmill at Dallas, Oregon, and the plaintiff at the time of the occurrences hereinafter indicated and for some time previous thereto, was in the employ of defendant as a sawfiler, and during the time plaintiff was so employed by defendant, the following notices were kept posted in conspicuous places within the building where plaintiff worked:

"NOTICE.

"This company charges a hospital fee of 75 cents per month, or any part thereof, after first three days' employment.

"In consideration of this fee, each employee is entitled to full medical and surgical attendance and necessary medicines and appliances for the treatment of any injuries or sickness, with full hospital care, for a period not to exceed sixty days for injuries, and thirty days for sickness. All medical and surgical attendance to be furnished by the company physician or surgeon.

"It is understood by all parties concerned that this agreement does not apply to accidents or sickness that may occur to employees of this company when not engaged in the services of the company.

"NOTICE.

"To comply with the Industrial Commission law or 'Compensation Act' and for the purpose of continuing Doctor and Hospital service for sickness. Beginning July 1st, 1914, the following Hospital fee will be charged by this company. Minimum charge 25 cents. 3 days employment or over 75 cents. For men earning less than $50.00 in any month 75 cents per month. For men earning over $50.00 in any month $1.00 per month. Out of all Hospital fees deducted as above the company will pay to the State Industrial Commission all fees without further charge to employees."

The plaintiff was employed at more than $50 a month and regularly paid the sum of $1 per month as required by the above notices. On the morning of April 27, 1915, at about 2 o'clock, the plaintiff became dangerously ill from an attack of appendicitis, and at 8 o'clock A. M. his wife went to the residence of Doctor Starbuck, the company's physician, to secure his services in the case but was informed by the doctor's wife that he was absent at Black Rock, some 16 miles from Dallas. At 1:30 P. M. plaintiff's wife went to a neighbor's house and called up Dr. Starbuck's residence over the telephone, and was again informed that the Doctor was absent. Becoming alarmed concerning plaintiff's condition, plaintiff's wife called in Dr. Bollman, a surgeon residing in Dallas, who performed an operation on plaintiff and thereafter continued to treat the case, for which services plaintiff paid Dr. Bollman the sum of $125.

It appeared from the evidence that Dr. Starbuck was known to the employees as the company physician and in that capacity had treated plaintiff on previous occasions, and it is admitted in the pleadings that he was such physician. Plaintiff demanded of defendant

the repayment of the money he had paid to Dr. Boll-
man, and upon defendant's refusal to pay the sum
demanded, brought this action.    Other facts appear in
the opinion.                                    AFFIRMED.

For appellant there was a brief and an oral argu-
ment by *Mr. Oscar Hayter*.

For respondent there was a brief over the name of
*Messrs. Smith & Shields,* with an oral argument by
*Mr. Roy F. Shields*.

1–3. The following facts and the legal conclusions re-
sulting therefrom may be taken as indisputable.    First,
that the notice posted by the defendant and the pay-
ment by plaintiff to it of the fees specified, constitute
a complete contract requiring defendant to furnish the
services of its physician to plaintiff under the circum-
stances mentioned.    Second, that it was the duty of
plaintiff to apply for such service before employing
another physician.    Third, it was the duty of the plain-
tiff to use reasonable diligence to find the company
physician and request his services before employing
another physician, and if he failed to use such dili-
gence he cannot hold the defendant.    Whether or not
he used such diligence was a question of fact for the
jury to determine.    If the party requiring the ser-
vices of a physician is ignorant as to who the physician
is, it is his duty to inquire and ascertain from the
company that employs him; but when the name and
place of business or residence of the physician is
known, the injured party should apply at the place
where, under all the circumstances, it is reasonable to
suppose the doctor may be found.

In the case at bar it appears that Dr. Starbuck had
an office and a young lady attendant whose custom it

was to advise patients of his whereabouts when absent, and it also appears that his telephone was so connected with the telephone of an adjoining drug-store, that any call for his office also rang up the drug-store, and that it was the custom of those employed in the drug-store to answer such calls in the doctor's absence and give such information as to his whereabouts as might be necessary. It is not shown that plaintiff knew of either of these arrangements and it appears that he had no telephone in his home.

4. Under the circumstances we are not prepared to say that there was any such lack of diligence on the part of plaintiff, or his wife, as will preclude a recovery. The first attempt to get Dr. Starbuck was made at 8 o'clock in the morning, at which hour of the day it would be only reasonable to assume he would be at his residence rather than at his office. Here plaintiff's wife was informed that the doctor was out of town, so it might reasonably appear to Mrs. Crites, who is not known to have been aware of the doctor's arrangement with the attendant or the drug-store people, that it would be useless to apply at the office, and the same is true with respect to her second call in the afternoon. It is true that Mrs. Crites might have gone to the mill office and discussed the situation with its officers, but it is shown that previous to her marriage she had been for several years a trained nurse, and even if such a course had been suggested to her it is not likely that she, or anyone else acquainted with the dangerous nature of the disease from which plaintiff was suffering, would have delayed longer and taken chances on plaintiff's life while red tape was being unwound in the matter of securing the services of a physician. The testimony concerning plaintiff's

condition indicates that Dr. Bollman's services were invoked none too soon.

There is no rule for the construction of this species of contracts different from the rules that apply generally to all contracts. So far as the defendant is concerned, it is in writing and by its terms the defendant promised absolutely to furnish plaintiff the services of its physician in case of sickness or injury. It was not a contract to furnish the services of its physician in the event he could be reached or was available, but to furnish his medical services when needed. It was not a charity service, such as figures in some of the cases cited by counsel for defendant; neither was it a contract to administer a trust fund for the benefit of persons subscribing thereto, which is described in other cases cited. It was a plain open agreement that in consideration of 75 cents per month paid by the employee, the employer would furnish him the services of its physician when needed. It is not probable that the sum paid by employee would exceed the cost of the service to be rendered, but such a condition is possible and in that case or in any case, the amounts paid by the employees went directly into the treasury of the company and was as much its money as the cash it received for lumber. None of the Oregon cases cited are hostile to this doctrine.

In *Miller* v. *Beaver Hill Coal Co.,* 48 Or. 136 (85 Pac. 502), it appeared that the defendant company retained from the wages of its employees the sum of $1.50 a month "for the hospital" and had a hospital at its mine. Mr. Chief Justice BEAN, after stating the testimony, said:

"We are of the opinion it falls short of proving a contract by the defendant to provide the plaintiff with necessary medical and surgical attendance in case of

injury. It merely shows that a certain sum each month was contributed by the plaintiff and his fellow employees, or exacted by the company, for the support and maintenance of a hospital for the use of the employees. There is no evidence that any statement or promise was made by the defendant to the plaintiff, or any of its employees, as to the object and purpose of the contribution or the benefit they would receive there-. from, other than it was for hospital purposes. The transaction, therefore, under the testimony, constituted in law nothing more than a subscription by the plaintiff and the other employees for charitable purpose of maintaining a hospital, where they could obtain such medical attendance and hospital accommodations as the fund thus subscribed would afford." .

In the case at bar the contract supplies the very element necessary to justify a recovery, which was lacking in the case cited, namely: a promise on the part of the company collecting the money to furnish the services.

In *Jackson* v. *Pacific Coast Condensed Milk Co.,* 61 Or. 158 (120 Pac. 1, 37 L. R. A. (N. S.) 757), the contract of employment was as follows:

"George Jackson, No. 54, enters the employ of the Pacific Coast Condensed Milk Co. as gen'l help, to be rated at 15¢ per hour from June 9, 1908; 50¢ per month to be deducted for Hospital Fund. Payment for each month's labor to be made on the 12th day of the following month. I agree to the above.

"(Signed)   GEORGE JACKSON.<br>"H. H. STEWARD, Supt."

It was held this created a liability on the part of the defendant to the extent of the fund on hand. This conclusion would seem to follow naturally from the very terms of the agreement.

It is useless to discuss further the decisions of courts of other jurisdictions. They vary as the terms of the

agreements vary, and are not at all harmonious even where the agreements are the same. We do not wish to be understood as holding that under all circumstances it is obligatory upon the employer to have a physician at hand at the very hour or minute his services are required, or be responsible for the services of some other physician which the employee may secure. The right to apply to another physician must depend upon the circumstances and the urgency of the case. A man with a boil upon his person might reasonably wait for a day for the service of a doctor, while one suffering from a severe attack of appendicitis would be rash to wait a single hour. The "rule of reason" applies here, as in all cases of a similar character.

The defendant in effect undertook that it would furnish the services of its physician when needed. It did not and could not furnish such services by reason of the fact that the physician was away and not immediately available. The plaintiff used what the jury found was reasonable diligence to get him and failing to do this, employed and paid another physician to do his work. To say that having bought and paid the company for this service in advance, he should be required to pay for it a second time and stand the loss, because the company was not in a position to furnish it, would not be just and would be to apply to this contract a rule not applied to other contracts. A contracts with B to deliver to him when he shall require it, 100 bushels of wheat and B pays for the wheat. When B requires the wheat it is found that A's granary has been destroyed and he has no wheat on hand with which to fulfill his contract. Whereupon B's demand being urgent he buys it elsewhere. Shall he not have compensation from A for this second outlay? Surely.

A restaurant-keeper contracts to furnish a customer with three meals a day for a week and takes his pay in advance. His employees strike and he finds himself at the middle of the week unable to furnish the meals. Must the customer go hungry until the strike is settled or the restaurant-keeper gets new help under penalty of losing what he has already paid if he eats at some other place? A hundred similar examples of every-day occurrences might be cited to illustrate the argument.

5. While a contract for a consideration to furnish one medical attention in the future is not technically one of insurance, it has many features in common with that species of contracts. Where it holds out a particular person to its employees as its physician, and such employee uses reasonable diligence to secure his services, finds him absent and after waiting a reasonable length of time for his return employs and pays some other person to perform the services which the employer contracted that the employee should receive at the hands of its surgeon, it is fair and just that such services should be paid for by the party who for a consideration guaranteed that they should be rendered by a person employed by it, and we so hold.

6. Another assignment of error relates to the admission on rebuttal testimony by another employee of defendant which was to the effect that upon several occasions when injured in the course of his employment, he had gone to Dr. Starbuck's office and found him absent, and was not directed to apply to any other physician for relief. This testimony was, we think, properly admitted. Dr. Starbuck, as a witness for the defendant, testified that he kept an attendant at his office who in his absence made all arrangements for the proper treatment of patients applying therefor. It would

seem clearly competent to show by testimony of the character indicated that such custom had not always been observed: *Hunt* v. *Lowell Gas Light Co.*, 3 Allen (85 Mass.), 418; *Hudson* v. *Houser*, 123 Ind. 309 (24 N. E. 243).

7. Another assignment relates to the admission of certain testimony of Mrs. Crites as to what occurred between her and Mrs. Starbuck upon the occasions when she inquired for the doctor at the family residence. Upon redirect examination counsel for plaintiff asked witness the following question: "During this conversation to which counsel referred on cross-examination, that you had with some one at Dr. Starbuck's residence, was there any directions given to you as to what should be done during his absence?" To which the witness answered "No." Counsel for defendant moved to strike out the answer but the court overruled the motion, saying that he would admit it as having a bearing upon the diligence used by plaintiff to ascertain the whereabouts of Dr. Starbuck. It is difficult to see that it had any such bearing and it is equally difficult to see, taking into consideration the answer given, how it could possibly have prejudiced defendant's case. If error at all it was harmless and the judgment should not be reversed on account thereof.

Taken as a whole we are of the opinion the case was fairly tried and the verdict and judgment such as should have been rendered. The judgment is affirmed.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.