Argued January 16, affirmed February 13, 1923.

## REED v. NATIONAL HOSPITAL ASSOCIATION.

(212 Pac. 537.)

**Trial—Nonsuit not Granted When Evidence Upholds Plaintiff's Right to Recover—On Motion for Nonsuit, Inferences are in Favor of Plaintiff.**

1. When evidence is produced by plaintiff tending to uphold his right to recover, a nonsuit will not be granted, and in considering the evidence every fair and legitimate inference which can arise therefrom must be made in his favor.

**Hospitals—Evidence Tended to Uphold Plaintiff's Right to Recover for Breach of Contract to Furnish Medical Services.**

2. In action for money expended for medical treatment and hospital services while under contract with defendant to furnish them without charge, evidence *held* as tending to uphold plaintiff's right to recover after defendant's breach of the contract by refusal to furnish medical and surgical treatment.

**Appeal and Error—Supreme Court cannot Pass on Weight of Evidence.**

3. Constitution, Art. VII, Section 3c, providing that no fact tried by a jury shall be otherwise re-examined in any court of this state unless the court can affirmatively say there is no evidence to support the verdict, prohibits the Supreme Court from passing on the weight of contested testimony.

**Trial—Giving Abstract Instruction not Applicable to Evidence Constitutes Error.**

4. The giving of abstract instructions inapplicable to evidence is mischievous and misleading, and constitutes error.

From Multnomah: WM. N. GATENS, Judge.

Department 2.

This is an action by Elmer L. Reed against the National Hospital Association, a corporation, to recover for money expended for medical and surgical treatment and hospital services while under contract with the defendant to furnish the same. From a judgment in favor of plaintiff, defendant appeals to this court.

It is averred by plaintiff, and admitted by defendant, that in consideration of monthly payments in the sum of $1.25 by the plaintiff to the defendant, the plaintiff was entitled to receive from the defendant, during the continuance of such monthly payments, and that the Hospital Association was bound to supply, certain services to Elmer L. Reed, the plaintiff

---

2. Duty and liability of one other than a physician or surgeon who contracts to provide medical or surgical attention for another, see notes in 36 L. R. A. (N. S.) 50; L. R. A. 1915D, 884.

Specific agreement to provide medical assistance, see note in 4 L. R. A. (N. S.) 55.

herein.   The contract recites that the Hospital Association will provide:

"All necessary medical and surgical treatment, free of charge, for a period not exceeding one (1) year for any one ailment, by any of the physicians and surgeons employed by the Association in their respective localities, including the services of the Association's Specialists, when in the judgment of the Association's attending physician such services are required.

"All necessary medicines, including serums, as prescribed by the Association's physicians, at drugstores designated by the Association and in the hospitals.

"Hospital services as provided by the Association, in cities where the Association maintains offices, such hospital services not to exceed six months when caused by any one illness or injury; but after the expiration of six months' treatment in the hospital, necessary medical and surgical treatment by the Association's physicians and surgeons, including medicines, may be continued in the aforesaid cities for a further period of six months."

It is then alleged that plaintiff paid to defendant, and that defendant received from plaintiff monthly payments from March, 1919, to March, 1920; that in November, 1919, Reed reported to the officers and employees of the Hospital Association that he was ill and requested the services of a physician and surgeon; that in obedience to such request a physician and surgeon of the defendant examined him and pronounced him well and free from affliction of any nature, when in truth and in fact the plaintiff was "seriously afflicted in his appendix and one of his kidneys and it was necessary for the preservation of the life and health of plaintiff for plaintiff to immediately submit to an operation on said appendix and kidney."

Defendant, answering this paragraph, admits that plaintiff called upon it for medical services at the date alleged.

The plaintiff further avers, in part, that he demanded of defendant the services of a physician and surgeon and hospital care, as provided by the contract existing between them, but that the defendant failed, neglected and refused to provide him with the services of a physician and surgeon, and failed to provide him with hospital accommodations, and that for this reason Reed was compelled to engage a physician and surgeon to perform a necessary operation upon himself and that he was obliged to incur an indebtedness of $500 for such services; that he was further required to procure care at the Emanuel Hospital of the City of Portland; that owing to his illness plaintiff was required to remain in the hospital for thirteen weeks and became indebted to the hospital in the sum of $211. The plaintiff demands of the defendant the total sum of $711.

For a further and separate answer, the defendant Association alleged that plaintiff requested it to provide medical services in connection with some ailment which he claimed to have; that the Association furnished services to him, as per contract, and that Reed availed himself thereof, but that thereafter, of his own accord, he discontinued such services and without the knowledge or consent of the Association employed other physicians and surgeons; that—

"defendant, subsequent to * * November, 1919, was ready and willing at all times to furnish medical and surgical treatment and hospital services, and did perform every and all of its obligations under its contract with plaintiff. Defendant denies that it refused at any time to furnish such services to plaintiff and denies that plaintiff was obliged to incur any expense

whatever by reason of any of the matters alleged in the complaint."

The plaintiff replied to the new matter in defendant's further and separate answer and defense.

Upon the trial of the cause the jury returned a verdict in favor of plaintiff in the sum of $711, whereupon the court entered judgment thereon, from which order the defendant appeals.

The defendant assigns error relating to the refusal of the court to grant a nonsuit, because "the evidence does not show any * * negligence or * * breach of contract by the defendant corporation, or any of its * * employees, * * or that the treatment of either physician was negligent, or careless, or improper * * "; second, in that the evidence shows that the plaintiff breached his contract with the defendant in failing to notify the defendant of his ailment; further, that the court erred by giving conflicting instructions and other instructions that were not applicable to the facts of the case.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Isham N. Smith* and *Mr. John F. Logan,* with an oral argument by *Mr. Smith.*

For respondent there was a brief and oral arguments by *Mr. Henry E. McGinn* and *Mr. Wilbur Henderson.*

BROWN, J.—It is admitted that Elmer L. Reed, plaintiff, entered into a valid contract with the defendant National Hospital Association, for surgical and medical treatment and hospital services. It is charged that the contract was broken. Each party to

the litigation asserts compliance with the contract, but avers breach upon the part of the other.

There are no intricate questions of law involved in this appeal. The matter for determination rests upon the evidence as disclosed by the record.

At the conclusion of the plaintiff's case, the defendant moved for a judgment of nonsuit. The court's ruling in denying the motion is assigned as error. Section 182, subdivision 3, Or. L., provides that:

"A judgment of nonsuit may be given against the plaintiff as provided in this chapter * * when upon the trial the plaintiff fails to prove a cause sufficient to be submitted to the jury."

1. It is the established law in this state that a nonsuit will not be granted whenever any evidence is produced by the plaintiff in the trial of a cause, tending to uphold his right to recovery; and in considering the evidence every fair and legitimate inference which can arise therefrom must be made in favor of the plaintiff. In truth, it has frequently been declared by this court that a motion for a nonsuit is in the nature of a demurrer to the evidence. It admits all that the evidence proves, and also all that it tends to prove. See local citations collected in *Farrin* v. *State Industrial Acc. Com.*, 104 Or. 452 (205 Pac. 984, 987, 988).

2. Did plaintiff make a case that comes within the requirements of the law as set down above?

Dr. A. M. Green, superintendent of Emanuel Hospital, situate in Portland, Oregon, testified that on December 3, 1919, the plaintiff in this case became a patient in that hospital, where he remained until March, 1920; that the patient was furnished by this hospital a room, surgery, medicines and dressings for a period of thirteen weeks, for the reasonable charge

of $211; that while in the hospital the patient had one minor and two major operations.

The plaintiff's testimony is to the effect that he was treated by Dr. Gillespie, representing the National Hospital Association, about the twenty-sixth day of October, 1919. From the physician's diagnosis of the case he wasn't satisfied as to the ailment from which the plaintiff was suffering but gave him some pills and advised him to return in a few days. He says:

"I came back in three days. I was feeling a little better. My back was the main trouble then. I could hardly lie in bed. He asked me how I was. I told him I was feeling better. He says, 'I was kind of afraid about you. I thought you were going to have some contagious disease such as smallpox'; that I had a temperature and everything led up to that.

"Q. What happened after that?

"A. I went back to work and would work a day or two and lay off a day or two; kept on that way until I finally went up to Dr. Trimball. * * I went to the office and told them [Hospital Association] I needed to see a doctor. * * They gave me a written order to go and see Dr. Trimball."

Witness informed the doctor that he believed he was suffering from appendicitis. Moreover, he testified that he had a high temperature when he was examined by Dr. Trimball. The physician examined him and stated that he was not suffering from appendicitis.

"He said all the matter with me was, some nerves in my side."

Plaintiff testified that Dr. Trimball gave him some ointment and told him to apply it to his side; that it would be all right in a couple of days, and that he should not worry. He says he had no further or-

ders, directions, advice or care from the Hospital Association, or from its representatives; that on the following day, which was Thanksgiving Day, he was invited to his mother-in-law's. He says he was then in bad shape; that he was quite ill and during the day he was put to bed and Dr. Trummold, his mother-in-law's family physician, was called in; that the doctor found plaintiff with a temperature of 103½.

On December 3d, plaintiff was taken from the home of his mother-in-law to Emanuel Hospital, where he was immediately operated on for appendicitis by Dr. Trummold.

Plaintiff testified that he had been too ill to communicate with the Hospital Association since November 26th, when he was examined by Dr. Trimball, but that his wife had gone to the office several times. He swore that he did not see or hear from the Hospital Association for about seven weeks after his operation for appendicitis, when a representative was sent out to see him, although his wife notified the Association of the situation on the morning after the operation was performed. He testified that his chief trouble was brought about by one of his kidneys, which caused his appendix to be inflamed, and that a second operation was required for the removal of the diseased kidney. He further testified, in response to the following questions of the defendant:

"Q. You didn't call on the Hospital Association for that either?

"A. No, we called on them several times between, and the manager wouldn't even talk to the wife; the manager had an engagement with her. He wouldn't talk to her at all.

"Q. Of course she told you that?

"A. Yes.

"Q. Do I understand that after the appendix operation it was your desire to have the Hospital Asso-

ciation take the matter out of Dr. Trummold's hands and look after you?

"A. I wanted them to come out and see what was the matter with me. * *

"Q. You want the jury to understand you couldn't have called the Hospital Association during all that time?

"A. Personally, myself, I couldn't."

Dr. Trummold testified to the plaintiff's severe illness when he saw him on November 27th. He was asked this question:

"Q. From what you saw of him on the 27th of November, could you say what his condition would have been on the afternoon of November 26th?

"A. Well, I believe he was very sick. * *

"Q. Could a doctor who examined him at that time, the 26th of November, 1919, the date of the Association's physical examination, have discovered he [plaintiff] was a critically sick man?

"A. I believe he could."

Dr. H. W. Howard, a specialist in genito-urinary diseases, who was called into the case by Dr. Trummold, testified to the diseased condition of the kidney and that an operation was imperative. Assisted by Dr. Trummold, he performed the second operation.

Mrs. Elmer L. Reed testified that on the day following her husband's first operation she telephoned the National Hospital Association and asked the girl at the office if she might speak to the manager. The attendant said that the manager was out, asked Mrs. Reed to state the case to her and said she would attend to it. Mrs. Reed acted upon this suggestion. Not having heard from the Association, she again called them over the telephone three or four days later. She asked them why the Association had not sent someone or called to see her husband, and was informed that the Association would let her know.

Still hearing nothing from them, she went to the office of the Association on the 13th or 14th of December, about ten days after the date of the first operation. At that time Mr. Bechtol, the manager, was not in. She found a girl at the desk, who advised her to leave her number and stated that she would call her. Hearing nothing, she again called the Association on the telephone, and finally got an appointment with Mr. Bechtol, the manager, for the following day at 11 o'clock. She says she went to the office pursuant to the arrangement, but Mr. Bechtol was not in. Thereupon she asked the office girl when he would be in and received the information that he would return almost any time. After waiting for him about fifteen minutes, she was informed that he was in. She testified that she then sent in her name, but that Mr. Bechtol refused to see her. On cross-examination she testified that she knew that her husband had this contract with the National Hospital Association; that on the morning after the operation for appendicitis, or on December 4, 1919, she endeavored to have the Hospital Association take charge of her husband.

At the conclusion of Mrs. Reed's testimony, the plaintiff rested his case, whereupon the defendant moved the court for an order of nonsuit, on the ground that the testimony of plaintiff failed to establish the allegations of the complaint in the particulars necessary to make a case.

The defendant Hospital Association should not have expected a man whose temperature was 103½, and who was suffering from appendicitis, superinduced by a diseased kidney, to go to its place of business and demand treatment. The jury had the right to believe, from the evidence, that the Association did have notice; that knowledge was brought home to it that the plaintiff was in need of, and en-

titled to, assistance under the terms of his contract. There is evidence in the record to the effect that the plaintiff was a sick man when he went to the Hospital Association for medical services on or about October 26, 1919. He was yet ill, in fact his condition was grave, when he went to the Association for medical treatment on November 26, 1919. He was then suffering from pain and believed that he had appendicitis. A physician acting on behalf of the Association made an examination, diagnosed his case and advised him that there was nothing seriously wrong with him. The physician then stated to him that the pain affecting his side was caused by nerves, and gave him an ointment to apply externally therefor, with the assurance that he would soon be all right. The next day he was very ill and had a high fever. His mother-in-law put him to bed and, without the knowledge of the plaintiff, called in a physician. A few days later plaintiff was taken to Emanuel Hospital and operated upon for appendicitis. From the evidence the jury had a right to believe that on the day following the operation the Hospital Association was notified of Reed's then condition and of his need for assistance. He had been but one day in Emanuel Hospital when, through his wife, he notified the defendant Association of his condition. It ignored the notice and failed to furnish him hospital care. This illness caused him to remain in Emanuel Hospital for thirteen weeks, without an offer of hospital accommodations from the defendant. From the evidence the jury had a right to believe that within three or four days after the first notice a second notice was given the Hospital Association, and, a few days later, a third notice; and, later still, that the wife of the sick man called upon the manager of the Hospital Association and

advised him of her husband's illness. Still no hospital care was forthcoming, nor was any medical or surgical treatment offered. Thereafter, the most serious operation was performed upon the body of the plaintiff. From this testimony, the jury had a right to find that the defendant Hospital Association had refused to abide by the terms of the contract hereinbefore set forth.

By far the greater portion of the expense of the illness was incurred after the wife notified the Hospital Association of the plaintiff's severe illness.

3. Under the record, as disclosed, the court could not properly grant the motion for nonsuit, and it correctly denied the motion for a directed verdict.

This is not a question of the weight of the evidence adduced by the respective parties. We are not called upon, nor are we permitted, to decide which party has made the better case. The fundamental law of this state provides that—

"No fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Const., Art. VII, § 3c.

We find some competent evidence in the record supporting each and every material allegation of the complaint. This constitutional provision has been applied many times. It is not subject to construction or interpretation. Its language is clear, plain, obvious and explains itself. Like the term "reasonable doubt," it is not made clearer by definition or exposition.

The law of plaintiff's case is governed by the holding of this court in *Jackson* v. *Pacific Coast Condensed Milk Co.*, 61 Or. 158 (120 Pac. 1, 37 L. R. A. (N. S.) 757); *Crites* v. *Willamette Valley Lbr. Co.*, 87 Or. 10 (169 Pac. 339, Ann. Cas. 1918D, 1050).

4. The court's instructions are asserted to be erroneous because not applicable to the facts in the case.

This court has many times held that abstract propositions of law, inapplicable to the evidence adduced upon the trial, are mischievous and misleading, and that the giving of such constitutes error. Among the many decisions, see the early case of *Morris* v. *Perkins,* 6 Or. 350. For a recent case, see *Miami Quarry Co.* v. *Seaborg Packing Co.,* 103 Or. 362, 379 (204 Pac. 492). In the latter case, however, Mr. Justice McCOURT, speaking for the court, after stating the general principle, makes the common-sense observation that—

"Though it is error to instruct the jury upon abstract propositions of law, a case will not be reversed upon that account, unless the court is able to see 'that under the circumstances disclosed by the record, the jury may have been, and probably were, misled, to the injury of the complaining party': *Salmon* v. *Olds,* 9 Or. 488, 491; *Gregoire* v. *Rourke,* 28 Or. 275 (42 Pac. 946)."

But in the case at issue, the instructions rest upon some evidence. There is no such conflict in the court's instructions as would warrant this court in reversing the case.

We have examined all assignments of error of the defendant, but believe that a fuller treatment is unnecessary, for the reason that every principle involved has been discussed by this court again and again.

In obedience to the command of the law, this case is affirmed.                              AFFIRMED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.