[Filed November 10, 1890.]

## THOMAS HARTVIG, Respondent, *v.* N. P. L. CO., Appellant.

Wrongdoer—When Liable.—It is well settled that a wrongdoer is liable for an injury which resulted as the natural and probable consequences of his wrongful act, and which he ought to have foreseen in the light of surrounding circumstances.

Jury—Proximate Cause.—It is ordinarily the province of the jury to ascertain whether the injury is the natural and proximate cause of the wrong complained of.

Duty of Master to Observe Care.—It is the duty of the master to observe due care and not to expose his servants to unreasonable risks; and when the nature of the business requires it, to make needful rules or regulations for its safe conduct so as to protect those in his employment against accidents.

Facts—When for the Jury.—It is not for the court to speculate upon the facts, but to submit them to the jury, if they tend to support the cause of action.

Appeal from Multnomah county: E. D. Shattuck, judge

*Thos. N. Strong,* for Defendant.

*R. Citron,* for Plaintiff.

Lord, J., delivered the opinion of the court.

This is an action to recover damages for injuries alleged to have been sustained by the plaintiff on account of the negligence of the defendant, its agents and servants. The only error complained of is the refusal of the court to grant a motion for non-suit interposed by the defendant. In substance the facts are these: The plaintiff was an ordinary laborer on the night force at the defendant's saw mill, who was engaged with other laborers at the foot of

the lumber chute for the purpose of removing lumber as
it descended to the foot of the chute and distributing it
about the yard.   On the evening alleged, while the plain-
tiff was at his work, it being nearly dark and the lighting
of the lamps in the mill had begun, a large stick of timber
was passed out from the saws over the rollers to the head
of the chute by the men above, and when it passed the
last rollers, coming end first, one-half of the stick would
project straight out, and when the center was passed
without giving any warning, it was let go and descended
down the chute with great force, striking in its descent a
small timber in the pile which flew around and violently
struck the plaintiff and injured him.   In the performance
of this work at the foot of the chute, the evidence shows
that the pushing of timber over the rollers at the head of
the chute, especially when a heavy timber like the one in
question was to be sent down it, rendered the place at
which the men worked at the foot of the chute extremely
dangerous and an unsafe place to work, unless some notice
or outcry was given so that they might take precautions
for their safety.   It does not appear that the defendant in
the conduct of this work established any rule or regulation
requiring such warning to be given, or that the men at the
top of the chute gave it, except of their own choice,
which was irregular, and often caused the interchange
of much swearing between the men at the top of the chute
and those at work at its foot.   The plaintiff is a Russian
Finn and speaks very little English, had done little or no
work of that kind, was not acquainted with nor informed
of the dangers of the work.   When the injury occurred
the plaintiff was a few feet away from the foot of the
chute engaged in the duties required by his employment.
Upon this state of facts the contention is, (1) that the
failure to give the warning when the timber was started
in its descent down the chute was not the proximate cause
of the injury; (2) that if the failure to give the warning
was negligence which caused the injury, it was the
negligence of a fellow servant, for which the defendant

company was not liable; (3) that if the warning had been given a like injury would have occurred to the plaintiff. Taking these propositions, as stated in their order, the first contention is that the injury was not occasioned by the descent of the timber for which no warning was given, but by another piece in the pile of lumber at the foot of the chute which it struck with great force and misplaced and sent forcibly and violently against the plaintiff, causing and inflicting upon him the injury of which he complains. The evidence shows that it was not unusual for timber and lumber to accumulate at the foot of the chute and on the chute; that the chute is hardly ever free from it; that sometimes it is so full or choked with lumber that such lumber acts as a buffer and retards the downward progress of the descending timber,—all of which tends to show that if there are only some pieces of timber on the chute or piled at the bottom of it, when a large piece is started down the decline and the chute is not so choked up as to retard its headway, that, from the nature of the incline, it must descend with great force and necessarily is liable to strike other sticks of timber, as here, of much less size, to which it will communicate its force and propelling power, sending it forcibly in the direction the power is received. But in this there is no break in the causal connection between the wrong complained of and the injury occasioned by it; no intervening agency changing or affecting the operation of the prime cause of the injury. As the heavy stick of timber was sent down the chute without any warning to the men at work at its foot, the wrong in thus sending it is naturally and directly communicated to the other piece of timber, which was there at the time under the circumstances indicated, and not through the intervention of some independent agency, making no break in the succession of events from the primary cause to its result in the injury.

One event followed the other in a continuous sequence without any immediate cause operating between the wrong and injury. The small piece of timber struck was there

as an incident to the work in hand, and it derived its force
and propulsion and became linked with the prime cause
by a causal connection which made the injury it occasioned
the natural and probable consequences of the wrongful
act or omission. *Railway Co.* v. *Kellogg*, 94 U. S. 475;
*Jacker* v. *Railroad Co.*, 52 Wis. 152; *Nelson* v. *Railroad Co.*,
30 Minn. 77; *Railroad Co.* v. *Hope*, 80 Penn. St. 377.[1] This
being true, the wrongful act or omission was the proxi-
mate cause of the injury. The principle is well settled
that a wrong-doer is liable for the injury which resulted
as the natural and probable consequence of his wrongful
act of which he ought to have foreseen in the light of sur-
rounding circumstances. And as the court said in *Ransier*
v. *Railroad Co.*, 32 Minn. 334: "Whether the injury in a
particular case was such natural and proximate result of
the wrong complained of is ordinarily for the decision of
the jury." *Reiper* v. *Nichols*, 31 Hun. 495. It is their
province to look at the facts as they transpire and ascer-
tain whether they are naturally and probably connected
in orderly sequence with the prime cause, or disconnected
by some intervening agency affecting its operation. Upon
this state of the evidence we are not authorized to take the
case from the jury and say the wrongful act or omission
was not the proximate cause of the injury. The next con-
tention is based on the assumption, that as the men at the
top of the chute and those at the foot were engaged in a
common undertaking they were fellow servants; and as
the failure to give the warning was the negligence of some
one of those above, it was the negligence of a fellow ser-
vant, for which the defendant company was not respon-
sible, and therefore no recovery can be sustained upon
that state of facts. The evidence establishes that it was
the duty of the defendant company to provide such rule or
regulation for the conduct of the work as would make the
place at which the plaintiff worked reasonably safe; that
to accomplish this object and render those at the foot of
the chute where the plaintiff worked reasonably safe, it
was necessary that a warning outcry should be given, so

(1) 21 Am. Rep. 100.

that when timber was started down the chute, and especially heavy timber and at night time, the men at the foot of the chute might have notice of its coming and get out of danger, or take precautions for their safety. The evidence shows that the plaintiff provided no such rule or regulation for the conduct of this dangerous work, but left the men engaged at the top of the chute without any direction in the matter,—those at the top and bottom of the chute shouting backward and forward at each other; and, as the counsel for the defendant says, the men at the foot of the chute abusing and swearing at those at the top whenever, in their opinion, they failed to give the proper warnings.

This exhibits a condition of things which nothing could more plainly show the necessity of the defendant providing a rule or regulation in the conduct of the work, prescribing and requiring those at the head of the chute not to start timber, and especially heavy timber and at night time, when the danger is increased, without giving a warning outcry in order that those at the foot of the chute engaged in the performance of their labor might have notice of the descent and take precautions for their safety. The place at which they and the plaintiff worked could only be rendered reasonably safe by the establishment of some such rule or regulation. As it is the duty of the master to furnish a reasonably safe place for his servant to work, it became the duty of the defendant company to provide such reasonable rule or regulation in the conduct of its business as would protect the men while engaged in their work at the foot of the chute. It required the defendant not simply to employ skillful and competent agents and employés on its service, but to adopt rules and regulations adapted to the dangerous nature of the business so as to guard against accidents,—in a word, to be vigilant in the use of means and in the adoption of measures to make the servants reasonably safe in their employment. To this extent the master assumes the risks, while the servant assumes the natural and ordinary risks incident to

the business in which he is engaged, including those arising from the negligence of his fellow-servants. As was said in *Anderson* v. *Bennett,* 16 Or. 529,[1] the duty devolving on the master is affirmative to take such measures, or to adopt such precautionary measures as the proper and safe conduct of his business requires to avoid accidents. An application of this principle to the defendant requires it to establish some suitable rule or regulation for the prosecution of this business which would render its employés reasonably safe in the discharge of their duties in the course of their employment. It was bound to observance of such care as would not expose them to risks and perils which might be guarded against by proper diligence or by the promulgation of suitable or needful rules for the safe management of its business.

If the defendant had provided some such rule requiring the men at the head of the chute to give warning before timber was started down the chute, and they should neglect to do it and an injury should occur to those below, the defendant, having performed its duty, would not be liable, no more than when a master furnishes a safe instrument and competent servant, and in using it such servant negligently injures a co-servant. Upon the facts as disclosed by this record the defendant has not exercised that care which the exigency of the situation required for the safety of those employed at the foot of the chute and is not in a condition to avail himself of the rule of non-responsibility to a servant for an injury caused by a fellow-servant. "Though we have said," justly remarked Baron Alderson, "that a master is not generally responsible to a servant for an injury occasioned by a fellow-servant while they are acting in a common service, yet this must be taken with *the qualification* that the master shall have taken due care not to expose his servants to unreasonable risks. It results that upon this phase of the case there was no error in refusing to take the case from the jury. The last point of contention is, that if the warning had been given when the timber was started

(1) 8 Am. St. Rep. 311.

down the incline, a like injury would have happened to the plaintiff. This is based on the assumption that the facts show that the position he occupied relative to the foot of the chute when the injury occurred was reasonably safe, and that if the warning had been given he would have remained where he was and not likely have changed it.

The evidence shows that he was at work near the foot of the chute, the nature of which necessarily required him to stoop often, his head in front of him and his body inclined over, so that at such time it was not possible for him to see the timber, although it may be seen by looking while it is being trimmed. How he would have acted if the warning had been given under such circumstances it is not possible for us to know. The piece of timber was unusually large and came down with a terrible crash and impetus, and we are bound to assume in view of the facts that he would have taken such precautions as the instincts of self preservation would have suggested on the occasion. It is not for us to speculate upon this, especially when the fact that he was injured at the place where he was, near the foot of the chute, while engaged in the performance of the duties. These facts tend to show that the place at which he worked was dangerous or unsafe, unless warning was given, and to emphasize its necessity to afford him an opportunity at least to take precautions for his safety. In cases of this character it is the peculiar province of the jury to determine the facts; and the court below committed no error in refusing the motion for non-suit, and allowing them to exercise their functions.

The judgment must be affirmed.