Argued July 14, reversed and remanded with directions July 31, rehearing denied September 14, 1920.

## WOODARD *v*. A. F. COATS LUMBER CO.

(191 Pac. 668.)

**Negligence—Complaint Held not to Charge Willful Injury.**

1. A complaint, in an action to recover damages for negligence *held* to charge mere negligent injury, and not a willful, purposeful injury, although the adverb "willfully" was used.

**Collision—Owner of Wood Being Towed in Barge not Liable for Negligence of Owner of Boat Doing the Towing.**

2. One having wood hauled in a barge was not liable for negligence of employees of the owner of the boat doing the towing, having no control over such employees.

**Master and Servant—Liability for Contractor's Negligence Defined.**

3. One employing a contractor in work involving property of the former is not liable for the negligence of the latter in the work, except where the work is inherently dangerous or liable to inflict damage upon another.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 1.

The plaintiff and his assignor are fishermen operating nets in Hoquarton Slough in Tillamook County, a tributary of Tillamook Bay, where the tide ebbs and flows. The Potter Realty Company was the

owner of a barge or scow which it used sometimes for the transportation of fuel oil in bulk and at other times for carrying wood. The Coats Lumber Company had wood for sale at Tillamook, on Hoquarton Slough. The Potter Realty Company caused the barge to be towed to Tillamook under an arrangement by which the defendant was to load it with wood, after which the barge owner was to take it to Bayocean. In the hold of the barge was some oil, left there from the last shipment. After the scow was loaded and the tide was at ebb, it settled on some piling that had been cut off in the bottom of the slough, sprung a leak and sank. Under these preliminary circumstances, the complaint charges negligence against the defendant, in the following language:

"That on or about said 13th day of August, 1918, and while said barge was carrying the oil and under the control heretofore stated, the defendant caused said barge to be taken from near defendant's dock, near Tillamook, Oregon, and towed downstream toward Tillamook Bay, to a point near the mouth of Hoquarton Slough. That said defendant, while in control of said barge or scow as aforesaid, caused the same to be beached and stranded on the bank of Tillamook Bay at the point stated, in such a manner that the tide, ebbing and flowing, alternatingly surrounded the hull of the same and left it stranded on said bank.

"That in the process of towing said barge the defendant operated the same in such a manner that said barge became damaged, and at all times material herein the hull of said barge was in such a damaged condition, a hole having been punctured in the same, on or about the date above set forth. That as said barge was towed down toward Tillamook Bay, as aforesaid, and as long as the hull remained afloat, the oil which was in said hull remained in the hold,

and would have remained in the hold if the barge had been towed out in Tillamook Bay, or if defendant had taken precautions to guard the same. But that defendant carelessly, willfully, and negligently and with full knowledge of the consequences of said negligence, caused said barge to be stranded and placed on the shore of said Tillamook Bay, in such a manner that when the tide ebbed and flowed the oil and oily substance flowed out of the hole above referred to, and spread broadcast over the waters of Tillamook Bay and its tributary streams. That a very large quantity of oil and oily substance flowed out of said barge as aforesaid, and was carried by the wind and tide in all directions over said waters.''

For injury, the plaintiff avers, in substance, that the oil saturated his net, so that it was unfit for fishing purposes, in that it became slippery and the material rotten and weak. The cause of action on behalf of his assignor is substantially the same.

The averments of the complaint were denied by the answer, which stated that the towing was done by the Potter Realty Company, and that the defendant did not have any control or direction over the scow or the movement thereof, beyond causing wood to be loaded upon it. This was traversed by the reply.

As a result of a jury trial there was a judgment for the plaintiff, and the defendant appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For respondent there was a brief over the name of *Messrs. Talmage, Claussen & Mannix,* with an oral argument by *Mr. Joseph Mannix.*

BURNETT, J.—1. As one ground for nonsuit the defendant urges that the complaint charges a willful, purposeful injury and that there was no evidence to sustain such a charge. It contends that a charge of designed injury is not sustained by proof of mere negligent injury. In our judgment, the complaint is not open to such criticism. No facts are stated indicating that the injury was intentionally inflicted. Nothing can be predicated in the way of averment on the use of the adverb "willfully." That is but a statement of a conclusion, and is not justified by the narration of facts contained in the complaint.

It is contended also by the defendant that it was not responsible for the acts of the individuals in charge of the tow from Tillamook towards Tillamook Bay. The actual work of towing the barge was done by Albert Biggs, an employee of the Potter Realty Company. He testified that that concern asked him to come to Tillamook and see that the Lumber Company got the scow, as it needed it. He said, speaking of the scow:

"Well, it had been brought here for the lumber company to load it with wood; and it got sunk and they [referring to the Potter Realty Company] asked me to see the people and see when they could get it ready so that they could get it back and get this oil."

Arriving at Tillamook, he called at the office of the company, and inquired about the boat. Learning that they could not get a tug, he testified:

"I told him that my boat was here, and we were in a hurry for the scow, and we might help them out, and I was told there in the office to go ahead; and they wanted to know if I could not beach the scow down there somewhere about that old schooner where they could look at her, and I told them I thought I could.

97 Or.—20

The boat and the tow and all did not work as I thought it would, and I saw I could not make it and so I beached her at this point below the ditch.''

He said he was assisted by Fred Grove, acting as a deckhand; that both of them were employees of the Potter Realty Company; that they were paid by that company and took their orders from it. The testimony of a witness, Van Tine, called for the plaintiff, was to the effect that he was one of the joint receivers of the Potter Realty Company, and as such authorized the scow to be taken to Tillamook in order that the defendant might load it with wood. Having learned that it was sunk, he testifies:

''I immediately ordered Mr. Grove and Mr. Albert Biggs to go to Tillamook and try to get the scow in shape to be loaded. They went to Tillamook on Monday, the twelfth, and raised the boat and got the water out of it.''

He further says:

''I sent them there to get the scow in shape to be loaded. We had had previous notice that the scow was not in shape to be loaded.''

In *Sturgis* v. *Boyer*, 65 U. S. 110 (16 L. Ed. 591), the ship Wisconsin was being towed by the steam tug Hector, in New York harbor. The tug was in charge of her own master and crew, and had complete control of the tow. Some of the crew of the Wisconsin were on board of her, but took no part in the management of the enterprise. While in tow, the flying-jib boom of the ship struck a lighter laden with flour, and capsized her. On the part of the tug it was alleged that she was employed by the owners of the Wisconsin to tow her to a certain dock; and that it was in a sense merely the servant of the ship. The Supreme Court of the United States, speaking by Mr.

Justice Clifford, disposed of the question in this manner:

"Owners appoint the master and employ the crew, and consequently are held responsible for their conduct in the management of the vessel. Whenever, therefore, a culpable fault is committed, whereby a collision ensues, that fault is imputed to the owners, and the vessel is just as much liable for the consequences as if it had been committed by the owner himself. No such consequences follow, however, when the person committing the fault does not, in fact, or by implication of law, stand in the relation of agent to the owners. Unless the owner and the person or persons in charge of the vessel in some way sustain towards each other the relation of principal and agent, the injured party cannot have his remedy against the colliding vessel. By employing a tug to transport their vessel from one point to another, the owners of the tow do not necessarily constitute the master and crew of the tug their agents in performing the service. They neither appoint the master of the tug, nor ship the crew; nor can they displace either the one or the other. Their contract for the service, even though it was negotiated with the master, is, in legal contemplation, made with the owners of the vessel, and the master of the tug, notwithstanding the contract was negotiated with him, continues to be the agent of the owners of his own vessel, and they are responsible for his acts in her navigation: *Sproul* v. *Hemmingway,* 14 Pick. 1; 1 Pars. Mar. L., 208; *The Brig James Gray* v. *The John Frazer et al.,* 21 How. 184."

This case is cited with approval in *The Eugene F. Moran,* 212 U. S. 446 (53 L. Ed. 600, 29 Sup. Ct. Rep. 339); *The J. P. Donaldson,* 167 U. S. 599 (42 L. Ed. 292, 17 Sup. Ct. Rep. 951, see, also, Rose's U. S. Notes); *The Violetta,* 149 Fed. 690, and many other cases. See, also, *McLoughlin* v. *New York,*

*L. & T. Co.,* 7 Misc. Rep. 119 (27 N. Y. Supp. 248);
*The Mabey & Cooper,* 14 Wall. 214 (20 L. Ed. 881,
see, also, Rose's U. S. Notes); *The Belknap,* Fed.
Cas. No. 1244; note in 65 L. R. A., p. 472.

2. There is nothing in the evidence to show that the
defendant had, or assumed to have, any control over
the details of accomplishing the work. The tow was
not taken where it had expected it to be stranded.
The whole process of towing was under the supervi-
sion of the owner of the boat doing the towing. Lay-
ing aside the circumstance that Biggs and Grove
were employees of the Potter Realty Company en-
gaged in towing that company's barge, the situation
most unfavorable to the defendant which can be drawn
from the testimony is that Biggs might be called a
contractor. This is scarcely contested by the plain-
tiff in argument, but he urges that it is within the
exception to the general rule exonerating a defend-
ant for the act of a contractor. The general excep-
tion to this rule is, that anyone contracting for the
performance of a work inherently dangerous or liable
to inflict damage upon another cannot shield himself
behind a contractor employed for the purpose of
performing the work. In this case it is not averred,
and the evidence does not show, that the mere tow-
ing of the barge was inherently dangerous to anyone.
Indeed, the complaint says that the barge was dam-
aged in the process of towing, and that as long as
the hull remained afloat the oil which was in said
hull remained there, and would have remained there
if the barge had been towed out into Tillamook Bay.
The injury was clearly the resultant of the act of
someone in charge of the work as a contractor, at the
most. It is difficult to see how the defendant can be

made liable for the shortcoming, if any, of an employee of the Potter Realty Company in towing a barge, the property of the latter, and acting under its orders and pay. The authorities on the matter of the exception to the general rule exonerating the one who employs a contractor are collated in *Giaconi* v. *Astoria,* 60 Or. 12, 36 (113 Pac. 855, 118 Pac. 180).

3. It is argued by the plaintiff that, as there is testimony to the effect that the defendant ultimately paid for the repairs made to the barge, it was responsible for the damage to the nets, because that fact indicates that it was in charge, at least, of the barge. This liability, however, does not follow; for one employing a contractor in work involving property of the former is not liable for the negligence of the latter in the work, with the exception already noted. For example, as shown in *Sturgis* v. *Boyer,* 65 U. S. 110 (16 L. Ed. 591), the contract of towage was made with the tug by the actual owners of the tow, and yet, for the reason that they had nothing to do with the direction of the details of the work of towing, they were exonerated, and the whole responsibility for the damage was placed upon the tug. The present case is a stronger one for the defendant than that. There, some of the crew of the Wisconsin were aboard the tug. Here, there was no employee of the defendant in any way concerned with the towing. It was exclusively in charge of Biggs and his deckhand, Grove, and they were both employed, paid by, and took their orders from the Potter Realty Company in respect to its own property.

These circumstances disclosed by the testimony of the plaintiff were sufficient, in our judgment, to lead the court to sustain a motion of involuntary nonsuit at the close of the plaintiff's case. The judgment

is therefore reversed, and the cause remanded, with directions to enter judgment of nonsuit.

REVERSED AND REMANDED WITH DIRECTIONS.

REHEARING DENIED.

MCBRIDE, C. J., and BENSON and HARRIS, JJ., concur.