Argued December 21, 1921, affirmed February 21, rehearing denied March 21, 1922.

# MIAMI QUARRY CO. *v.* SEABORG PACKING COMPANY.

### (204 Pac. 492.)

**Negligence—"Proximate Cause" Defined.**

1. The "proximate cause" of an injury is that which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.

**Shipping—Owner of Abandoned Barge must Exercise Care to Secure It Against Drifting.**

2. The owner of an abandoned barge owes the duty to exercise reasonable care to secure the barge to meet conditions that might naturally be expected, such as tides and tempestuous weather, rendering the barge liable to float and collide with other craft or structures.

**Negligence—Proximate Cause Question for Jury.**

3. Ordinarily the question of proximate cause is one for the jury, and becomes one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them.

Negligence—Foreseeing Precise Injury not Necessary for Proximate Cause.

4. For a particular act to be the proximate cause of the injury, it is not essential that the precise injury for which the recovery is sought should have been foreseen, but it is sufficient if the defendant could have reasonably anticipated that some injuries might result from the act complained of.

Negligence — Independent Intervening Cause, not Foreseeable, Relieves Wrongdoer.

5. A wrongdoer is not liable for a negligent act where an independent efficient cause that he, in the exercise of reasonable diligence, could not have foreseen, intervenes and produces an injury which otherwise would not have occurred.

Negligence—Ordinary Weather Conditions not Independent Cause.

6. Usual and expected weather conditions, and the natural and ordinary action of wind and water, do not ordinarily constitute an independent intervening cause which supersedes the original wrongful act, so as to make the latter the remote, and not the proximate, cause of the injury.

Shipping — Improper Mooring of Abandoned Barge as Proximate Cause of Injury to Jetty Held Question for Jury.

7. Where an abandoned barge was negligently moored, so as to go adrift, and, after passing out to sea by a jetty was thrown by the currents upon the shore south of the jetty, and broken up, after which the section was carried by an eddy and by the wind back against the jetty, causing the injury, the intervening natural forces were not necessarily independent causes of the injury, and it was a question for the jury whether the negligent mooring of the barge was the proximate cause of the injury.

Towage—Operator of Tug not Responsible as Independent Contractor for Barge After Towing Contract Ceased.

8. The operator of a tug engaged in a towing contract is ordinarily an independent contractor, but he is not liable as such for injuries caused by the barge after he had beached and moored it and notified the owners of his action.

Towage—Evidence Held not to Show Negligence by Tug in Mooring Beached Barge.

9. Evidence that the master of a tug, on discovering that a barge in tow was leaking, beached the barge and anchored it, and also moored it to the shore, does not show negligence by the master where the barge, after the owner had removed the anchor and left the barge secured by light lines, drifted off and injured plaintiff's jetty and pile-driver.

Shipping—Evidence Held to Warrant Inference of Negligence by Owners of Abandoned Barge.

10. Where the owners of a barge removed all machinery from it, and contracted with an individual to move the barge to another place, where the extent of its injuries could be determined, and, after the contractor reported he could not float the barge, dismissed the matter without any attempt to ascertain whether the barge

was securely, moored, so as to prevent its injury to other craft and structures during more than a week that intervened between the time of such report and the time the barge went adrift, the jury could find the owners failed to discharge their duty to ascertain what was reasonably required to make the barge. safe, and to take the necessary. precautions.

### Master and Servant—Owner of Property Liable for Continuance of Dangerous Condition Created by Independent Contractor.

11. After an independent contractor transfers the control of the property to the owner, the owner is liable for injuries caused thereafter by dangerous condition of the property, though such condition was originally created by the independent contractor, if he permitted such condition to continue after it was in his power to remove it.

### Master and Servant—Barge Owner cannot Delegate Duty to Moor Safely.

12. Where an abandoned barge had been beached in such position as to be liable to shift its position and become dangerous to the property of others, the owner could not delegate to an independent contractor his duty to exercise reasonable care safely to moor the barge.

### Master and Servant—Instructions on Liability for Independent Contractor's Acts Held Proper.

13. Evidence that an owner of an abandoned barge failed to take any steps to secure it safely after an independent contractor had reported he had abandoned attempts to move the barge warranted the trial court from giving instructions as to exceptions from the rule against liability for negligence of an independent contractor in cases where the duty could not be delegated.

### Appeal and Error—Error in Instructions as to Nondelegable Duty of Owner Held Invited by Defendant.

14. Where the error in giving instructions on liability for acts of an independent contractor was invited by defendant's request for such instruction, though there was no evidence to sustain it, defendant cannot complain that the jury were permitted to determine whether the acts of the independent contractor were performed in discharge of a nondelegable duty devolving on defendant.

### Trial—Instructions not Based on Pleadings and Evidence are Erroneous.

15. Where neither the pleadings nor the evidence contained any basis for submitting questions whether the work of mooring a barge was intrinsically dangerous, or was done by an independent contractor, instructions in respect thereto, though correct as abstract propositions of law, were erroneous.

### Appeal and Error — Abstract Instruction Does not Require Reversal Unless Probably Misleading.

16. A case will not be reversed for error in giving abstract instructions, unless the court can see that, under the circumstances, the jury may have been, and probably were, misled to the injury of the complaining party.

Appeal and Error — Appellant cannot Complain of Instructions Misleading to Appellee's Prejudice.

17. Appellant cannot complain of abstract instructions, which, if they misled the jury, would mislead it to appellee's prejudice.

Appeal and Error—Party Entitled to No Instruction on an Issue cannot Complain He Received Only Part of Instructions Requested.

18. Where a party was not entitled under the evidence to have given any of the instructions requested by him on an issue, he cannot complain that only a part of the instructions so requested were given.

Shipping—Instruction as to Duty of Owner of Abandoned Barge Held Correct.

19. An instruction that, even though there had been a contract for towing a barge, yet if, later, the defendant took possession of the barge, and negligently moored or secured it, defendant would be liable, was correct.

Trial—Refusal of Requested Instructions Already Correctly Covered is not Error.

20. Error cannot be predicated on the refusal to give requested instructions where the court in its charge had already fully covered the matter embraced therein.

Appeal and Error—Admission of Piece of Rope With Which Barge was Moored Held Harmless.

21. In an action for damages caused by a barge which went adrift where there was evidence from several witnesses that the barge was moored only by three light lines, the admission in evidence of a piece of rope stated by a witness to be similar to that with which the barge was moored, if erroneous, was not prejudicial to defendant.

From Multnomah: W. N. GATENS, Judge.

Department 2.

This is an action to recover damages upon account of the alleged negligence of the defendant, resulting in injury to a jetty that plaintiff was constructing and the loss of a pile-driver owned by plaintiff. Plaintiff recovered a verdict and judgment in the Circuit Court. Defendant appeals.

A statement of the facts disclosed by the evidence follows.

Defendant owned a barge, 157.7 feet in length, with a beam of 30.7 feet, which was furnished with

machinery, equipment and supplies that made it available for use as a floating fish cannery.

About April 1, 1919, defendant employed a tug to tow the barge from Astoria to Gold Beach, where defendant intended to use the barge in its business of canning fish. The tug left Astoria, with the barge in tow, on the afternoon of April 2, 1919, and shortly encountered heavy weather. The captain of the tug discovered, when near Yaquina Bay, that the seams of the barge had opened, and that it was taking water very rapidly. To prevent it from sinking and becoming a total loss, the captain of the tug on April 3, 1919, entered Yaquina Bay and beached the barge near the town of Newport, Oregon, in a position where it was subject to the current of the river which flows into Yaquina Bay and to the ebb and flow of the tides. For the purpose of preventing the barge from being carried away by the action of the wind and waters, an anchor was dropped at one end of the barge and three lines were thrown out and tied to piling on the shore, by the captain of the tug. After thus mooring the barge, the tug left Yaquina Bay, and the captain thereof abandoned the effort to tow the barge to Gold Beach, and notified the defendant of the condition of the barge and the disposition he had made thereof.

On the eighth or ninth day of April, 1919, Frank L. Waller, secretary of the defendant company, together with the president of the defendant company, arrived at Yaquina Bay and took charge of the barge and unloaded therefrom all of the machinery, equipment and supplies above mentioned, and lifted and carried away the anchor that had been put out as an aid in securing the barge to its mooring.

Thereupon defendant left the barge tied with three small lines, and engaged one Z. C. Copeland, who owned a small launch, to pull the barge from the beach and to tow it to a structure across the bay know as the "gridiron," upon which it was to be placed, in order to discover the extent of its impairment. Copeland made two unsuccessful attempts to dislodge the barge from the beach and float it—one upon the 18th of April, 1919, and the other upon the following day. His launch did not have sufficient power to remove the barge from the beach, so Copeland gave up the effort and again tied the barge to the piling on the shore by three light lines, and gave no further attention to it. On April 20, 1919, Copeland by letter notified the defendant at Portland, Oregon, of his inability to move the barge, and that he would make no further effort to do so. On receipt of the notification from Copeland of what he had done, the officers of the defendant who had charge of the matter, dismissed the barge from their minds, and thereafter defendant made no effort to ascertain the manner in which it was moored and took no precautions to prevent the barge from being carried away by the ordinary forces of wind and water.

Between the point where defendant's barge was beached and moored and the mouth of Yaquina Bay, numerous small crafts were at the time moored along the shores of the bay, and several structures used as docks and landing places projected into the waters of the bay.

At the times mentioned, plaintiff was engaged in the construction of a jetty from a point on the south side of Yaquina Bay, westerly out into the Pacific

Ocean, the purpose of which was to protect the channel at the mouth of the bay from an accumulation of sand and other obstructions to navigation.

In constructing the jetty, plaintiff used a piledriver, with which piles were driven into the bed of the ocean as the work progressed. When driven, the piles were secured or braced together in series or "bents," and on the top of the piling, between ten and fifteen feet above the water, a temporary track was laid, over which the pile-driver was moved and operated, as well as cars carrying rock, which was dumped into the ocean to form the channel protection and also to strengthen and hold the piling. When in operation, the pile-driver was stationed upon the temporary track some distance beyond the point reached by the supporting rock work, and at the time the pile-driver was lost, it was upon the track at a point about five hundred feet west of the line of low tide.

During the night of April 30th, and at high tide, defendant's barge floated; the lines with which the barge had been secured to the shore had either been carried away by unknown parties, or were insufficient to hold it, and when the tide receded, the barge was carried down the bay past the jetty, upon the north side thereof, and beyond it into the ocean. The following morning the waves, influenced by the ocean currents, the direction of which at the mouth of Yaquina Bay is southerly, dashed the barge upon and against the ocean shore, about two thousand feet south of the jetty, where it was broken into pieces. The extension of the jetty beyond the ocean shore line leaves the water south of the jetty for

some distance and near the shore, unaffected by the southerly ocean currents, and produces therein what some of the witnesses described as still water and others as an eddy.

A few hours after the barge was broken up, a section thereof, about twenty by thirty feet in dimensions, was washed from the shore, and by the action of the wind and ocean waves, driven northerly towards the jetty, and finally against the same on the south side and near the point where plaintiff's pile-driver was stationed. The force of the section of the barge striking the jetty, broke off several "bents" of the piling and precipitated plaintiff's pile-driver into deep water, where it was completely lost.

Defendant assigns numerous errors, which it asserts were committed by the Circuit Court in the course of the trial.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Maurice W. Seitz.*

For respondent there was a brief over the name of *Messrs. Wilbur, Spencer, Beckett & Howell,* with oral arguments by *Mr. Ralph W. Wilbur* and *Mr. Maurice E. Crumpacker.*

McCOURT, J.—The first question presented by this appeal arises upon the refusal of the court (a) to grant a nonsuit, and (b) to direct a verdict in favor of the defendant, in response to motions seasonably made by defendant therefor.

Defendant contends that the omissions of which plaintiff complains were not the proximate cause of

the injury for which plaintiff seeks damage. In support of this contention, defendant argues that the injury complained of could not have been foreseen or reasonably anticipated by a person of ordinary foresight and prudence, happening as it did, after the barge had floated out to sea without striking the jetty, and after it had been cast upon the beach south thereof; that a reasonably prudent man could not foresee that the action of the wind and waves, in connection with the eddy south of the jetty, would drive the barge, or a section thereof, in a direction opposite to the ocean currents and against the jetty; and that the rough sea and the eddy created by the jetty constituted an intervening cause and the proximate cause of plaintiff's injury and resulting damage.

1. A widely quoted definition of proximate cause is the following:

"The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred": 22 R. C. L. 110.

2. It was the duty of the defendant to exercise reasonable care to secure its barge to meet conditions that might naturally be expected, such as high tides, changes of tides and tempestuous weather, rendering the barge liable to float and collide with other craft or structures in its course: 11 Corpus Juris, 1095, 1098, and notes. There was evidence that defendant did not fully dicharge this duty.

3. Ordinarily the question of whether a particular act was the proximate cause of the injury complained of is one for decision by the jury, and it is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of

proximate cause becomes one of law for the court: *Hartvig* v. *N. P. L. Co.*, 19 Or. 522, 525 (25 Pac. 358); *Wallace* v. *Suburban Ry. Co.*, 26 Or. 174 (37 Pac. 497, 25 L. R. A. 663); 22 R. C. L. 148; *Elliff* v. *Oregon R. & N. Co.*, 53 Or. 66 (99 Pac. 76); *Palmer* v. *Portland Ry., L. & P. Co.*, 56 Or. 262, 268 (108 Pac. 211); *Hartford Fire Ins. Co.* v. *Central R. R. Co.*, 74 Or. 144 (144 Pac. 417); 22 R. C. L. 149.

"The principle is well settled that a wrongdoer is liable for the injury which resulted as the natural and probable consequence of his wrongful act, of which he ought to have foreseen in the light of surrounding circumstances. And as the court said in *Ransier* v. *Minneapolis etc. Ry. Co.*, 32 Minn. 334 [20 N. W. 332]: 'Whether the injury in a particular case was such natural and proximate result of the wrong complained of is ordinarily for the decision of the jury.' *Reiper* v. *Nicols*, 31 Hun (N. Y.), 495. It is their province to look at the facts as they transpired and ascertain whether they are naturally and probably connected in ordinary sequence with the prime cause, or disconnected by some intervening agency affecting its operation." *Hartvig* v. *N. P. L. Co.*, 19 Or. 522, 525 (25 Pac. 358).

4. In order to constitute a particular act the proximate cause of the injury, it is not essential that the precise injury for which recovery is sought should have been foreseen; it is sufficient if the defendant could have reasonably anticipated that some injury might result from the omission of which complaint is made: 22 R. C. L. 125, 126.

5. One is not liable for a negligent act where an independent, efficient cause that the wrongdoer, in the exercise of reasonable diligence, could not have foreseen, intervenes and produces an injury that

would not have resulted in the absence of such intervening cause: 22 R. C. L. 132.

6. But usual and expected conditions of weather and the natural and ordinary action of the forces of wind and water, operating on a negligent act, will not ordinarily constitute an independent, efficient intervening cause, which will supersede the original wrongful act, so as to make it the remote and not the proximate cause of the injury: 22 R. C. L. 126, 140.

"The ordinary conditions or forces of nature, such as ordinary wind, cold, heat, and the like, that are usual at the time and place and under the circumstances, and that reasonably should have been expected or foreseen as probable to occur, are not, in general, independent, efficient causes, when they affect or operate on a negligent act or omission in causing a result. Those who are negligent are held in law to know the usual effect of ordinary natural conditions and forces on a negligent act or omission, and to have contemplated the appearance and the effect of such conditions and forces on their negligence or on its proximate results, and to be liable in damages for the natural and probable proximate results of the negligence": 22 R. C. L. 140.

Many authoritative and approved definitions of proximate cause, as that term is understood in the law of negligence, are quoted in the cases of *Brown* v. *Oregon Wash. R. & N. Co.*, 63 Or. 396, 403 (128 Pac. 38); *Chambers* v. *Everding & Farrell*, 71 Or. 521, 531–539 (136 Pac. 885, 143 Pac. 616).

A valuable guide in determining when a particular act or omission is the proximate cause of an alleged injury is set forth in the opinion in the case of *Salmi* v. *Columbia & N. R. R. Co.*, 75 Or. 200 (146 Pac. 819, L. R. A. 1915D, 834).

Mr. Justice BURNETT, speaking for the court, said:

"It is a basic principle that, if the cause set in motion by the defendant operates continuously and directly upon another agency which as a necessary consequence affects a still different force by which injury is inflicted, the author of the initial cause is responsible for the final result. The difficulty lies in the application of this fundamental doctrine. The authorities are apparently in hopeless conflict on this question, but it is believed that proper discrimination will reconcile them in this manner. If, under all the circumstances in the exercise of ordinary care, a person can discern that his act will naturally and probably result in harm of some kind to another, but not necessarily foreseen as to the exact form of injury, the former is liable in damages for the ensuing casualty. On the contrary, if no harmful result can reasonably be expected, or if there is no natural connection between the act of the defendant and the injury alleged, no action will lie."

7. It was manifest that injury would probably result to craft or structures in Yaquina Bay in the event defendant's barge was permitted to leave its mooring and float or be carried down the bay, and if the barge floated and was carried down the bay on account of the failure of the defendant to take reasonable precautions to prevent the same, defendant was liable for any injury caused thereby and which was connected in ordinary sequence with its negligent acts or omissions, disconnected with any responsible intervening cause; the action of the waves and the flow of the tide would not be such an intervening cause, nor would they be changed into such an intervening cause by the fact that the barge did not strike the jetty on its way out of the bay, but did so thereafter and by operation of the waves and tide upon the eddy to the south of the jetty. Defendant was bound to anticipate that the barge, if permitted to

float unrestrained and uncontrolled, would probably do some damage to the property of others, and it cannot escape liability because that injury was produced by movements of the barge that defendant did not or could not foresee.

The Circuit Court, therefore, was not in error in submitting the question of defendant's negligence to the jury and also the question of whether such negligence was the proximate cause of the injury to plaintiff.

Defendant advances the further contention that the undisputed evidence showed that its independent contractor was guilty of the omissions which plaintiff claims were the proximate cause of his damages.

8. The operator of a tug engaged in a towing contract is ordinarily held to be an independent contractor: *Woodard* v. *A. F. Coats Lumber Co.*, 97 Or. 302 (191 Pac. 668); but he is not such independent contractor unless made so by the terms of the towing contract, and then only as to the work embraced in the contract and as to acts done while the subject matter is under his control.

The contract of towing the barge from Astoria to Gold Beach came to an end when the captain of the tug beached, anchored and moored the barge in Yaquina Bay and notified defendant of his action.

9. Moreover, there was no evidence showing that the master of the tug was negligent in mooring the barge. After the barge was left in Yaquina Bay, and the original contract of towing was terminated, defendant took possession of the barge and removed everything of value from it, including its anchor, and became responsible for its secure mooring. Defend-

ant after taking charge of the barge, tied it with three light lines to piles on the shore.

10. Upon leaving the barge, defendant engaged one Z. C. Copeland to take the barge from the place where it was beached to the "gridiron," but Copeland abandoned the undertaking without materially changing the position of the barge, and upon ceasing the effort to carry out his employment, Copeland left the barge moored substantially as it was when the defendant engaged him to move it, and promptly notified defenddant of his action.

Upon receipt of notice from Copeland that he was no longer looking after the barge, the responsible officers of the defendant dismissed the matter from their minds; they made no effort to ascertain whether the barge was safely secured and moored, and took no precautions to prevent the barge from being carried away by the action of the tides and winds.

More than a week elapsed between the time that defendant received the aforesaid notice from Copeland and the time the barge was carried away, which was ample time for the defendant to discharge the duty which devolved upon it, to ascertain what was reasonably required to make the barge safe, and to attend to and carry out necessary precautions.

11. As soon as an independent contractor transfers the control of the subject matter of the contract to the employer, whether upon completion or stoppage of the work, the employer incurs the responsibility which the law attaches to the exercise of the control; "and the mere fact that the dangerous conditions which caused the injury were originally created by the negligence or other tortious act of a contractor will not afford him any protection, if he permits them

to continue after it is in his power to remove them": 14 R. C. L. 66.

While the barge laid upon the beach in Yaquina Bay, defendant owed a duty to plaintiff and others in like situation, to exercise reasonable care to secure and moor the barge in such a manner that it would not be carried away by ordinary wind and tides.

12. Defendant did not employ Copeland to safely secure and moor the barge in the position it occupied on the beach, but if it had, the barge was so situated that it was liable to shift its position and become dangerous to the property of others, and defendant could not in such circumstances relieve itself of the duty to exercise reasonable care to safely moor the barge, by employing an independent contractor.

Where a party is under a duty to the public to so care for property owned by him that it will not injure the property of others, that duty is absolute, and cannot be delegated to an independent contractor: Thompson on Negligence, § 865; *Covington etc. Bridge Co.* v. *Steinbrock,* 61 Ohio St. 215 (55 N. E. 618, 76 Am. St. Rep. 375, and note on p. 404); *Carrick* v. *Southern Power Co.,* 157 N. C. 378, 381 (72 S. E. 1065); *Cole* v. *Durham,* 176 N. C. 289 (97 S. E. 33, 11 A. L. R. 560); *Boucher* v. *New York, N. H. & H. Ry. Co.,* 196 Mass. 355 (82 N. E. 15, 13 L. R. A. (N. S.) 1177).

The evidence, not only does not show that responsibility for the acts of negligence complained of were those of an independent contractor, but it establishes as a matter of law that the responsibility was that of the defendant, and not that of an independent contractor.

13. In response to defendant's contentions and theory of the case, and in the face of exceptions taken

by plaintiff, the court instructed the jury that an employer is not liable for the acts of an independent contractor, and submitted to the jury the question whether the acts of negligence relied upon by plaintiff were committed by an independent contractor. The court also instructed the jury, to which exceptions were taken by both plaintiff and defendant, that there are certain well-known exceptions to the rule that an employer is not liable for the acts of an independent contractor; that among such exceptions is the case where the contract is let by a responsible employer to an irresponsible contractor, for the purpose of enabling the employer to escape liability for injury in the performance of work necessarily attended with danger; the case where the injury is the necessary consequence of executing the work in the manner provided for in the contract, or in the manner subsequently prescribed by the employer, and cases in which the injuries are caused by the performance of some nondelegable duty which the employer is bound to discharge; also cases where the work intrusted to an independent contractor is intrinsically dangerous to the public, however skillfully performed, and injury results directly from such intrinsic danger.

The court further assumed to make a concrete application of some of the exceptions mentioned, and directed the jury that if they found the barge was a dangerous instrumentality and was likely to cause damage unless properly secured and moored, the defendant could not delegate the duty of securely mooring the same, to an independent contractor, and defendant would be liable if found negligent as charged; that if they found the work of securing and

mooring the barge was essentially dangerous, or if they found that the act of securing and mooring the barge was done by an independent contractor in the manner prescribed by defendant, and that the same was done negligently, then they should find for the plaintiff.

Defendant assigns as error the instructions defining and applying the above-mentioned exceptions. The instructions complained of, for the most part correctly stated the rule of law relative to the release of an employer from liability for the negligence of an independent contractor, and likewise the exceptions to the rule. Defendant complains that there were no issues made by the evidence, to which the instructions defining the aforesaid exceptions were referable, and on that account the instructions were abstract and calculated to mislead the jury, and we think the record supports defendant's contention.

14. Whether the acts of negligence relied upon by plaintiff were committed by an independent contractor, and whether defendant could, by employing an independent contractor, relieve itself from liability for failure to exercise the requisite care in mooring its barge, were issues tendered by the pleadings. But the questions arising upon those issues were questions of law; and it was error to submit them to the jury, as the uncontradicted evidence established that the acts of negligence relied upon by defendant were not committed by an independent contractor; also that the barge in the place that it was stranded, and in the circumstances shown by the evidence, was liable to escape and injure the property of others, unless safely moored.

Having invited error by inducing the court to submit to the jury the question of whether the acts of negligence with which defendant was charged were committed by an independent contractor, the defendant cannot complain that the court permitted the jury to determine whether under all the circumstances such acts were performed in discharge of a nondelegable duty devolving on defendant and shown by the evidence.

15. Neither the pleadings nor the evidence contained any basis for submitting to the jury the questions of whether the work of mooring the barge was intrinsically dangerous, or whether the work was done as contracted or was let to an irresponsible contractor, to avoid liability for injury from work necessarily attended with danger; the instructions in respect thereto, though perhaps correct as abstract propositions of law, were erroneous: *Askay* v. *Maloney,* 85 Or. 333, 341 (166 Pac. 29); *Morris* v. *Perkins,* 6 Or. 350; *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442); *Bailey* v. *Davis,* 19 Or. 217 (23 Pac. 881); *Bowen* v. *Clarke,* 22 Or. 566 (30 Pac. 430, 29 Am. St. Rep. 625); *Geldard* v. *Marshall,* 47 Or. 271 (83 Pac. 867, 84 Pac. 803); *Olsen* v. *Silverton Lbr. Co.,* 67 Or. 167 (135 Pac. 752).

16. Though it is error to instruct the jury upon abstract propositions of law, a case will not be reversed upon that account, unless the court is able to see "that under the circumstances disclosed by the record, the jury may have been, and probably were, misled, to the injury of the complaining party": *Salmon* v. *Olds,* 9 Or. 488, 491; *Gregoire* v. *Rourke,* 28 Or. 275, 278 (42 Pac. 996).

The only questions properly for determination by the jury in this case were: (1) Was the defendant negligent, as charged? (2) If defendant was so negligent, was such negligence the proximate cause of plaintiff's injury? (3) What damages did plaintiff suffer? Defendant offered no evidence upon any of these issues.

17. The instructions of which defendant complains were calculated to mislead and divert the jury from consideration of the real issues in the case, to the injury of plaintiff, with corresponding advantage to defendant, a result that affords defendant no ground of complaint.

18. By instructing the jury concerning the exceptions to the rule relieving an employer from liability for the acts of an independent contractor in connection with the rule itself, the court erroneously granted defendant a part, but not all, it asked by way of instructions to the jury.

"One who is entitled to nothing cannot complain that he gets something, but less than he asks." *Railway Co.* v. *Suddoth,* 70 Miss. 265 (12 South. 205).

It is not probable that the jury were misled, to the prejudice of defendant, by the instructions of which defendant complains, and the nature and amount of the verdict justifies no inference that the jury were so misled.

19. The court instructed the jury as follows:

"If you find that even though there had been a contract for towing, yet if later the defendant took possession or control of the barge, and then negligently moored or secured or tied it so that this accident happened, then the defendant would be liable to the plaintiff for the damages, if any.

"If you should find that even though there had been a contract for towing, yet if later, the defendant took possession or control of the barge, and then negligently moored or secured or tied it so that this accident happened, or if you should find that after the towing company had left the barge in a dangerous condition known to the defendant, if it was left in a dangerous condition, or if it should have been known by the defendant, it was then the duty of the defendant to use reasonable care to properly secure said barge."

The foregoing instructions are embraced in defendant's assignments of error XIV and XV. Taken together, the instructions quoted contain correct statements of law, and they were applicable under the facts as disclosed by the evidence adduced upon the trial. No error was committed by the court in so directing the jury.

20. Defendant predicates error upon the refusal of the court to define proximate cause, as requested by defendant. In the instructions given the jury, the court defined proximate cause substantially as requested by defendant, and hence it was not error to refuse the requested instruction.

The court refused a request made by defendant to instruct the jury in effect, that if they found from a preponderance of the evidence that there was negligence in securing or mooring the barge in any particular, as alleged, and that such negligence was the proximate cause of the damage, if any, suffered by the plaintiff, it would then be necessary for the jury to determine whether or not such negligence could be attributed to the defendant, and that if they found that such negligence was that of an independent contractor, plaintiff would not be entitled to a verdict. Defendant assigns error upon the refusal of the court to give the instruction mentioned. The court, in its

charge, fully covered the entire matter embraced in this request, and it was not error to deny the same.

21. Defendant assigns error upon the admission of certain testimony given by F. H. Koehler, a witness in behalf of plaintiff. A piece of rope, five eighths of an inch in diameter, was produced by Frank A. Fox, another witness in behalf of plaintiff, while on the stand, which the witness Fox testified he had received from Koehler in response to a request made of Koehler for a piece of the rope with which the barge was tied. While Fox was upon the stand, the piece of rope was marked as an exhibit, but was not admitted in evidence. · Koehler testified that Fox came to him and asked for a piece of the rope that came off of the barge; that he gave him a piece of that rope, which was something like the piece produced by Fox, just about the length of that; that it was the same kind of line he took from the barge. The piece of rope was then offered in evidence and admitted by the court, over the objection of defendant's counsel; the objection of the defendant did not go to the testimony of Koehler, but to the admission in evidence of the piece of rope. Several witnesses testified that the barge was tied with two or three light lines less than an inch in diameter.

. There was some evidence to go to the jury to prove that the piece of rope in question was a section of one of the lines with which the barge was tied.

The only effect of admitting the piece of rope in evidence was to display before the jury the appearance of a rope five eighths of an inch in diameter, which could not have worked harm to defendant, even though it was not a piece of the rope with which the barge was tied, as the ordinary juryman has a fairly accurate idea of the appearance and strength of such

a rope. In any aspect of the matter, there was no prejudicial error in admitting the piece of rope in evidence.

Finding no prejudicial error committed by the court in the trial of the cause, the judgment of the Circuit Court is affirmed.   AFFIRMED.   REHEARING DENIED.

BURNETT, C. J., and BEAN and BROWN, JJ., concur.

---

Motion to dismiss and affirm filed November 18, conditionally over-
ruled December 14, 1920, argued on the merits December 2,
1921, affirmed January 17, objections to cost bill overruled
March 21, 1922.